UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| COREY CROUCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:20-cv-00159-JPH-DLP |
| | ) | |
| RICHARD BROWN, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Corey Crouch alleges that he was held in solitary confinement in multiple Indiana Department of Correction ("IDOC") facilities from 2016 through 2019. He further contends that during that time his placement in solitary confinement was not meaningfully reviewed, and he was forced to live in oppressive and inhumane conditions.

The defendants argue that they are entitled to summary judgment because Mr. Crouch failed to exhaust administrative remedies that were available to him before he filed this lawsuit. For the reasons discussed below, the defendants' motion for summary judgment is **granted**, and this action is **dismissed**.

**I. Legal Standards**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there

is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in the light most favorable to the non-moving party, and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

In accordance with Local Rule 56-1(f), the Court assumes that facts properly supported by the movant are admitted without controversy unless the non-movant specifically disputes them. Likewise, the Court assumes that facts asserted by the non-movant are true so long as they are supported by admissible evidence. S.D. Ind. L.R. 56-1(f)(2).

On a motion for summary judgment, "[t]he applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Sys., Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to this motion for summary judgment is the Prison Litigation Reform Act ("PLRA"), which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524–25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90–91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022,

2

1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

As the movants, the defendants bear the burden of establishing that the administrative remedies upon which they rely were available to Mr. Crouch. *See Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015) ("Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it."). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake,* 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). "[A]n inmate is required to exhaust those, but only those, grievance procedures that are capable of use to obtain some relief for the action complained of." *Id.* at 1859 (internal quotation omitted).

## II. Conditions-of-Confinement Claims

Mr. Crouch describes the conditions of his confinement extensively in his complaint. *See* dkt. 1 at ¶¶ 200–30. Based on these allegations, the Court identified plausible Eighth Amendment claims at screening. Dkt. 10 at 3.

The parties agree that the IDOC Offender Grievance Process ("OGP") was an administrative remedy program through which Mr. Crouch could have sought relief from these conditions. Neither party asserts that any other administrative remedy program offered Mr. Crouch relief from the conditions underlying his Eighth Amendment claims.

The defendants have filed two versions of the OGP that were applicable during different portions of Mr. Crouch's time in solitary confinement. Dkts. 19-2, 19-3. Because the relevant provisions of the two versions contain no material differences, the Court cites only the more recent version, dkt. 19-3.

To exhaust the remedies available through the OGP, an inmate must complete four steps. *See id.* at §§ X–XIII. Step 1: Initially, an inmate must attempt to resolve his concern informally by discussing it "with the staff member responsible for the situation or, if there is no such single person, with the person who is in charge of the area where the situation occurs." *Id.* at § X. An inmate must document his attempt to resolve the complaint informally. *Id.* He may do so by completing a "Request for Interview" form. *Id.*

Step 2: If there is no informal resolution, the inmate must submit a formal grievance on State Form 45471. *Id.* at § XI. Within five business days, an Offender Grievance Specialist ("OGS") must either accept and log the formal grievance or reject it for failing to meet eight basic standards. *Id.* at § XI(B). If the OGS does not reject the grievance, he must provide a written response to the inmate within 15 business days. *Id.* at § XI(C).

Step 3: If an inmate is not satisfied with the OGS's response, he must submit a grievance appeal written on State Form 45473 to the OGS within five business days after receiving the OGS's response. *Id.* at § XII. Within one business day, the OGS must forward the grievance appeal and all relevant documents to the Warden or his designee for review. *Id.* The Warden or his designee must respond within five business days of receipt. *Id.*

Step 4: If, after receipt of the appeal response, the offender is still dissatisfied, or if no response is received within the time frame, he may appeal to the Department Offender Grievance Manager. *Id.*

IDOC has designated evidence showing that Mr. Crouch did not file a formal grievance or a grievance appeal. Dkt. 19-4. In response, Mr. Crouch designates the following affidavit testimony:

> 4. During my time in the SHU at WVCF, I submitted grievance documents relating to the conditions of my confinement, which I received no response to.

4

5. The grievance documents specifically complained about the bird feces in the cages, standing water in the cages, and the showers being dirty.

6. After submitting the grievance documents. I lack personal knowledge of what was done with the grievance documents.

Dkt. 23-1. Mr. Crouch provides no information, however, about what grievance documents he submitted, to whom he submitted them, or when he submitted them.

Mr. Crouch's affidavit testimony does not create a genuine dispute as to whether he exhausted the remedies available to him through the OGP. From Mr. Crouch's testimony the Court could, at best, infer that Mr. Crouch submitted unknown documents at an unknown time during his 46 months in segregation. This is not sufficient to support the inference that Mr. Crouch submitted the specific documents required by the OGP, much less that he submitted them in the time and place required by the OGP. *See Dale,* 376 F.3d 652 at 655.

Mr. Crouch argues that his testimony raises a genuine factual dispute because it shows that "he submitted grievances that were not answered." Dkt. 24 at 10. Mr. Crouch correctly notes that "prison officials' failure to respond to a prisoner's claim *can* render administrative remedies unavailable." *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005) (emphasis added). But Mr. Crouch's affidavit does not support a conclusion that he submitted the materials in the form, at the time, and at the place that would have obligated the prison staff to respond. Dkt. 23-1; *see Dole v. Chandler*, 438 F.3d 804 (7th Cir. 2006) (evidence that plaintiff completed grievance form on a specific date and submitted it on a specific date and in a specific location supported conclusion that he took all necessary steps to exhaust); *Brengettcy*, 423 F.3d at 682 (evidence that plaintiff "filed a grievance as early as August 23, 2000, in compliance with CCDOC's internal timetables," supported conclusion that plaintiff took all necessary steps to exhaust).

"To survive summary judgment, there must be evidence on which the jury could reasonably find for the [nonmoving party], . . . and the nonmoving party must point to specific facts showing

that there is a genuine issue for trial; inferences relying on mere speculation or conjecture will not suffice." *Trade Fin. Partners v. AAR Corp.*, 573 F.3d 401, 406–07 (7th Cir. 2009) (citations and quotations omitted). The Court "must draw inferences in [the non-movant's] favor," but that "'does not extend to drawing inferences that are supported by only speculation or conjecture.'" *Estate of Biegert v. Molitor*, 968 F.3d 693, 701 (7th Cir. 2020) (quoting *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008)).

Here, Mr. Crouch has not designated evidence refuting defendants' evidence that he did not file a formal grievance or appeal. Even accepting his testimony as true, no reasonable jury could find that Mr. Crouch took all the actions necessary to exhaust or that the defendants rendered the OGP unavailable by failing to respond to his submissions. *Anderson*, 477 U.S. at 248. The defendants are therefore entitled to judgment as a matter of law on Mr. Crouch's conditions-of-confinement claims.

### III. Solitary Confinement Claims

The defendants argue that Mr. Crouch had two avenues to challenge his prolonged solitary confinement—the IDOC Disciplinary Code for Adult Offenders and the Adult Offender Classification Policy—and that he did not exhaust the remedies available under either.

**A.**     **Facts**

In February 2016, Mr. Crouch was housed at Plainfield Correctional Facility ("PCF"). On February 26, 2016, he pled guilty to committing battery in violation of the Disciplinary Code. Dkt. 19-10. The hearing officer assessed sanctions, including 120 days in disciplinary segregation. *Id.* The hearing officer specifically directed that Mr. Crouch be housed in disciplinary segregation from February 1 through May 30, 2016. *Id.*

6

Over the following four years, Mr. Crouch was housed under three different classifications at three different facilities. Mr. Crouch's classification reports indicate that he was placed in disciplinary restrictive status housing ("disciplinary") on February 2, 2016, pending his disciplinary hearing. Dkt. 19-8 at 1. On June 29, 2016, a decision was made to transfer Mr. Crouch to department-wide disciplinary restrictive status housing ("department-wide"). *Id.* at 12. The following day, Mr. Crouch arrived at the Westville Control Unit ("WCU"). *Id.* at 14. On March 30, 2017, Mr. Crouch was transferred again to the Special Confinement Unit at WVCF and remained in department wide. *Id.* at 15. On August 10, 2017, he was reclassified to department-wide administrative restrictive housing ("administrative"). *Id.* at 24.

In that four-year period, Mr. Crouch received 35 "Report of Classification Hearing" ("ROCH") documents. Dkt. 19-8. After his transfer to WVCF, Mr. Crouch also received 21 written reviews of his administrative classification between November 20, 2017 and May 2019. Dkts. 19-15, 23-2.

Mr. Crouch's ROCHs and classification reviews are summarized in the following table, beginning with the decision to place him in department-wide:

| Document | Classification Action | Date Approved |
|---|---|---|
| Dkt. 19-8 at 12 | ROCH: Transfer to department-wide | June 29, 2016 |
| Dkt. 19-8 at 14 | ROCH: Admit to department-wide | June 30, 2016 |
| Dkt. 19-8 at 15 | ROCH: Remain in department-wide | Mar. 30, 2017 |
| Dkt. 19-8 at 16 | ROCH: Remain in department-wide | Apr. 6, 2017 |
| Dkt. 19-8 at 17 | ROCH: Remain in department-wide | Apr. 12, 2017 |
| Dkt. 19-8 at 18 | ROCH: Remain in department-wide | Apr. 18, 2017 |
| Dkt. 19-8 at 19 | ROCH: Remain in department-wide | Apr. 28, 2017 |
| Dkt. 19-8 at 20 | ROCH: Remain in department-wide | May 3, 2017 |
| Dkt. 19-8 at 21 | ROCH: Remain in department-wide | May 10, 2017 |
| Dkt. 19-8 at 22 | ROCH: Remain in department-wide | May 19, 2017 |
| Dkt. 19-8 at 23 | ROCH: Remain in department-wide | May 24, 2017 |
| Dkt. 19-8 at 24 | ROCH: Transfer to administrative. | Aug. 10, 2017 |
| Dkt. 19-8 at 25 | ROCH: Remain in administrative. | Aug. 23, 2017 |
| Dkt. 19-8 at 26 | ROCH: Remain in administrative. | Aug. 30, 2017 |
| Dkt. 19-8 at 27 | ROCH: Remain in administrative | Sept. 6, 2017 |

| Dkt. 19-8 at 28 | ROCH: Remain in administrative. | Sept. 22, 2017 |
| --- | --- | --- |
| Dkt. 19-8 at 29 | ROCH: Remain in administrative. | Oct. 5, 2017 |
| Dkt. 19-8 at 30 | ROCH: Remain in administrative. | Oct. 16, 2017 |
| Dkt. 19-8 at 31 | ROCH: Remain in administrative. | Oct. 24, 2017 |
| Dkt. 23-2 at 1 | Review: Remain in administrative. | Nov. 20, 2017 |
| Dkt. 23-2 at 2 | Review: Remain in administrative. | Dec. 6, 2017 |
| Dkt. 23-2 at 3 | Review: Remain in administrative. | Jan. 9, 2018 |
| Dkt. 23-2 at 4 | Review: Remain in administrative. | Feb. 13, 2018 |
| Dkt. 23-2 at 5 | Review: Remain in administrative. | Mar. 15, 2018 |
| Dkt. 19-8 at 32 | ROCH: Remain in administrative. | Mar. 27, 2018 |
| Dkt. 23-2 at 6 | Review: Remain in administrative. | Apr. 6, 2018 |
| Dkt. 23-2 at 7 | Review: Remain in administrative. | May 9, 2018 |
| Dkt. 19-8 at 33 | ROCH: Remain in administrative. | May 21, 2018 |
| Dkt. 23-2 at 8 | Review: Remain in administrative. | June 5, 2018 |
| Dkt. 23-2 at 9 | Review: Remain in administrative. | July 11, 2018 |
| Dkt. 23-2 at 10 | Review: Remain in administrative. | Aug. 2018 |
| Dkt. 23-2 at 11 | Review: Remain in administrative. | Sept. 2018 |
| Dkt. 23-2 at 12 | Review: Remain in administrative. | Oct. 2018 |
| Dkt. 23-2 at 13 | Review: Remain in administrative. | Nov. 2018 |
| Dkt. 19-8 at 34 | ROCH: Remain in department-wide | Nov. 30, 2018 |
| Dkt. 23-2 at 14 | Review: Remain in administrative. | Dec. 2018 |
| Dkt. 23-2 at 15 | Review: Remain in administrative. | Jan. 2019 |
| Dkt. 23-2 at 16 | Review: Remain in administrative. | Feb. 1, 2019 |
| Dkt. 23-2 at 17 | Review: Remain in administrative. | Mar. 2019 |
| Dkt. 23-2 at 18 | Review: Remain in administrative. | Apr. 2019 |
| Dkt. 23-2 at 19 | Review: Remain in administrative. | May 2019 |
| Dkt. 19-15 at 6 | Review: Remain in administrative. | July 19, 2019 |
| Dkt. 19-15 at 7 | Review: Remain in administrative. | Aug. 19, 2019 |
| Dkt. 19-8 at 35 | ROCH: Remain in administrative. | Sept. 16, 2019 |

The Classification Policy was in place for the entirety of Mr. Crouch's stay in solitary confinement. Dkts. 19-11, 19-12, 19-13, 19-14. Throughout that time, the Classification Policy included a Classification Decisions Appeal Process ("Appeals Process").

For intra-facility classification decisions, the Appeals Process was initiated when the inmate received a classification decision from the Supervisor of Classification. Dkt. 19-11 at 1; dkt. 19-12 at 10; dkt. 19-13 at 10; dkt. 19-14 at 10. Within 10 business days, the inmate could appeal the decision by submitting a written appeal to the Warden using State Form 9260. *Id.* The Appeals Process obligated the Warden to log the appeal and issue a written response to the inmate.

8

Dkt. 19-11 at 1–2; dkt. 19-12 at 10–11; dkt. 19-13 at 10–11; dkt. 19-14 at 10–11. The Warden's decision was final. *Id.* As such, an inmate satisfied his obligations under the Appeals Process when he submitted his appeal form.

For inter-facility transfer decisions, the Appeals Process was initiated when the inmate was informed of the decision by the Supervisor of Classification. Dkt. 19-11 at 2; dkt. 19-12 at 11–12; dkt. 19-13 at 11–12; dkt. 19-14 at 11–12. Within 10 working days, the inmate could appeal the decision by submitting a written appeal to the Deputy Commissioner of Operations on State Form 9260. Dkt. 19-11 at 2–3; dkt. 19-12 at 11–12; dkt. 19-13 at 11–12; dkt. 19-14 at 11–12.

The defendants assert that the Appeals Process is explained to inmates during orientation when they enter the IDOC. Dkt. 19-6 at ¶ 26. Mr. Crouch does not dispute that the Appeals Process was in place during his solitary confinement or that he was made aware of the policy upon entrance into the IDOC.

No IDOC records show that Mr. Crouch ever submitted a classification appeal that was received and logged by the Warden. Dkt. 19-6 at ¶ 32. Mr. Crouch attests that he appealed the ROCH dated May 21, 2018, but never received any response. Dkt. 23-1 at ¶ 11.

**B.     Analysis: Disciplinary Code**

The Disciplinary Code allows an inmate to "appeal a disciplinary disposition" within 15 days of the disciplinary hearing. Dkt. 19-9 at 1. This process gave Mr. Crouch no avenue to seek relief from his prolonged solitary confinement. Within 15 days of his disciplinary hearing on February 26, 2016, Mr. Crouch could have used the Disciplinary Code to appeal his disciplinary sanction of 120 days in disciplinary. The claims proceeding in this action, though, stem from the three-and-a-half years Mr. Crouch spent on department-wide and administrative without, allegedly, any meaningful review of his status. Dkt. 24 at 4 ("Crouch chose not to appeal the

9

'Report of Disciplinary Hearing' because he pled guilty and agreed that placement in disciplinary segregation for 120 days was appropriate."). A disciplinary appeal would not have provided an opportunity to resolve those claims at the prison level.

**C.     Analysis: Classification Policy**

Mr. Crouch does not dispute the defendant's assertion, dkt. 19-6 at ¶ 26, that the Appeals Process was in place during his solitary confinement or that he was made aware of the policy upon entrance into the IDOC. However, IDOC records do not show that Mr. Crouch ever submitted a classification appeal. Dkt. 19-6 at ¶ 32. Mr. Crouch attests that he "appealed" the ROCH dated May 21, 2018, "but never received any paperwork back from this appeal." Dkt. 23-1 at ¶ 11. Afterward, he "wrote a letter to Lt. Nicholson asking why [the] appeal had been denied, but never received a response to this letter." *Id.* at ¶ 12. This designated evidence, however, does not create a genuine factual dispute to defeat summary judgment because it is vague and not specific. Accepting Mr. Crouch's testimony as true, a reasonable trier of fact could not conclude that Mr. Crouch "appealed" his May 21, 2018 ROCH by submitting the proper form to the proper official by the applicable deadline. *Anderson*, 477 U.S. at 248; *Dale,* 376 F.3d at 655.

Mr. Crouch argues that the Appeals Process was not available to him as a vehicle for resolving his complaints about prolonged, unreviewed solitary confinement. He points out that the Appeals Process does not specifically state that an inmate may challenge his "continued classification" or "recommendations made by the caseworkers." Dkt. 24 at 4–5. Therefore, Mr. Crouch argues, a 30-day review amounts only to a caseworker's recommendation and therefore is not a classification decision subject to the Appeals Process.

But Mr. Crouch does not dispute that each ROCH was a classification decision appealable through the Appeals Process. Mr. Crouch received 23 ROCH documents while in department-wide

or administrative, each of which reports the outcome of a "Classification Hearing" and includes a box labeled, "Supervisor of Classification: Decision and Basis." Dkt. 19-8 at 1. The Appeals Process places no constraints on the grounds on which an inmate may base his appeal. *Cf. Dole*, 438 F.3d at 808–09 ("Exhaustion is necessary even if the prisoner is requesting relief that the relevant administrative review board has no power to grant, such as monetary damages, . . . or if the prisoner believes that exhaustion is futile . . . .") (citing *Porter*, 534 U.S. at 532; *Booth v. Churner*, 532 U.S. 731 (2001)). Mr. Crouch has not designated evidence showing that he could not have asserted in his classification appeal that he was deprived of meaningful review.

As an example, Mr. Crouch received a ROCH on June 30, 2016, and did not receive another ROCH until March 30, 2017. Dkt. 19-8 at 14–15. The Appeals Process permitted Mr. Crouch to appeal the March 30 ROCH. In doing so he could have raised any concerns he had about the thoroughness of the March 30 ROCH and any concerns he had about the amount of time that passed between his reviews.

Mr. Crouch received appealable ROCHs on 23 occasions, including June 30, 2016, and September 16, 2019. He has not designated evidence showing that he properly appealed any of them. As a result, he failed to exhaust available administrative remedies, and the defendants are entitled to judgment as a matter of law.

## IV. Conclusion

The defendants' motion for summary judgment, dkt. [19], is **granted**. This action must be **dismissed without prejudice**. *See Ford,* 362 F.3d at 401 ("[*A*]*ll* dismissals under § 1997e(a) should be without prejudice."). The **clerk is directed** to enter **final judgment** consistent with this Order and the Screening Entry at dkt. 10.

**SO ORDERED.**

Date: 7/16/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Jeffrey R. Cardella
LAW OFFICE OF JEFF CARDELLA LLC
jeffcardella@cardellalawoffice.com

Kyle Christie
CHRISTIE FARRELL LEE & BELL, P.C.
kyle@cflblaw.com

Archer Riddick Randall Rose
INDIANA ATTORNEY GENERAL
archer.rose@atg.in.gov

Margo Tucker
INDIANA ATTORNEY GENERAL
margo.tucker@atg.in.gov